UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,      : 19-cr-00259-BMC-VMS-1
                               :
      - versus -               : U.S. Courthouse
                               : Brooklyn, New York
                               :
JAHMEEK HUDSON,                : October 1, 2019
              Defendant        : 11:45 AM
------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government:**          **Richard P. Donoghue, Esq.**
                                 United States Attorney

                          BY:    **James McDonald, Esq.**
                                 Assistant U.S. Attorney
                                 271 Cadman Plaza East
                                 Brooklyn, New York  11201


**For the Defendant:**           **Florian Miedel, Esq.**
                                 Miedel & Mysliwiec, LLP
                                 80 Broad Street
                                 Suite 1900
                                 New York, NY 10004


**Transcription Service:**       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Ave.
                                 West Islip, New York 11795
                                 laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

                        Proceedings

1           THE CLERK:  Criminal Cause for a Change of

2   Guilty Plea, case number 19-cr-259, United States v.

3   Jahmeek Hudson.

4           Counsel, can you state your name for the

5   record.

6           MR. MCDONALD:  Good morning, your Honor.

7           James McDonald on behalf of the United States.

8           THE COURT:  Good morning.

9           MR. Miedel:  Good morning, your Honor.

10          Florian Miedel for Mr. Hudson.

11          THE COURT:  Good morning.  All right.  And

12   that's Mr. Hudson next to you?

13          MR. MIEDEL:  Yes.

14          THE COURT:  All right.  Let's just talk about

15   one procedural point before we get going here, so having

16   read the documents, there's a Doe party here.  How do you

17   propose that purpose be addressed in this proceeding?

18          MR. MCDONALD:  I think it's appropriate to

19   refer to the person as Jane Doe.  I think we all know who

20   the person is.

21          THE COURT:  You --

22          MR. MCDONALD:  So I don't think there's any

23   ambiguity, as long as Mr. Miedel agrees.

24          MR. MIEDEL:  That's correct.

25          THE COURT:  All right.  So I don't know who

3

                    Proceedings

1   that person is, so we will confirm that issue, when we

2   get to it.  Okay.

3          So in terms of the paperwork, what I have been

4   told is this is a change of plea hearing, but there's no

5   plea agreement.

6          Is that right?

7          MR. MCDONALD:  That's correct, your Honor.

8          MR. MIEDEL:  Correct.

9          THE COURT:  Okay.  So what I have is from the

10  government, a plea penalty sheet, which I had requested.

11  So defendant's counsel, have you seen that?

12         MR. MIEDEL:  Yes, I have.

13         THE COURT:  And any comments on it?

14         MR. MIEDEL:  No.

15         THE COURT:  Okay.  Do you agree it's correct?

16         MR. MIEDEL:   It is.

17         THE COURT:  Okay.  I also have an element

18  sheet, which the government also provided.  So

19  defendant's counsel, have you seen this?

20         MR. MIEDEL:  Yes, I have.

21         THE COURT:  And do you agree that the

22  statements in it are correct?

23         MR. MIEDEL:  Yes.

24         THE COURT:  Okay.  I also have a copy of the

25  indictment, and I have the consent to have a plea taken

4

Proceedings

1   before me.

2            All right.  Is there any other paperwork I

3   should have before we get going here?

4            MR. MCDONALD:  No, your Honor.

5            MR. MIEDEL:  No, your Honor.

6            THE COURT:  Okay.  All right.  So starting with

7   the government, are there any victims of the offenses,

8   and if so, has the government fulfilled its obligation to

9   notify them of today's hearing, and their right to be

10  heard?

11           MR. MCDONALD:  Yes, your Honor.  We have

12  fulfilled our obligations.

13           THE COURT:  And the victims would be the Jane

14  Doe?

15           MR. MCDONALD:  The Jane Doe.

16           THE COURT:  Okay.  So you've notified Jane Doe

17  of her right to attend the hearing and be heard?  Is that

18  right?

19           MR. MCDONALD:  She has been notified by our

20  Victim Notification Office.  Beyond that, I -- the

21  specifics of whether or not she's been notified that she

22  has the right to be heard, I assume that's taken care of

23  by victim notification services.

24           THE COURT:  All right.  Is that the usual

25  practice of your office --

Proceedings

5

1       MR. MCDONALD:  Yes, your Honor.

2       THE COURT:  -- to notify victims --

3       MR. MCDONALD:  It is.

4       THE COURT:  -- that they have the right to

5  attend and be heard?

6       MR. MCDONALD:  Yes.

7       THE COURT:  Is there any reason to think this

8  was handled in any other way than the usual course of

9  business?

10      MR. MCDONALD:  No.

11      THE COURT:  Okay.  All right.  So Mr. Hudson,

12  we're going to start by administering an oath to you.  So

13  I am going to ask my deputy to administer the oath.  So

14  if you could stand.

15      THE CLERK:  And can you raise your right hand.

16  J A H M E E K  H U D S O N ,

17     having been first duly sworn, was examined and

18     testified as follows:

19      THE CLERK:  Thank you.  You can have a seat.

20      THE COURT:  All right.  So you have two

21  microphones on that table.  If you would like, you can

22  pull the second one closer to you, and then you and your

23  counsel will each have a microphone.

24          All right, so Mr. Hudson, as you may know, this

25  case has been assigned to a district judge, Judge Cogan.

6

Proceedings

1    He's the judge who will make the ultimate decision as to

2    whether to accept your guilty plea.  And if he does

3    accept your guilty plea, to sentence you.  You have the

4    absolute right to have the district judge, Judge Cogan

5    listen to your plea without any prejudice to you.

6              Do you understand?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  So what's been proposed is rather

9    than doing this part of the proceeding before Judge

10   Cogan, that we'll proceed before me.  I assume you know

11   who I am, but just for the record, it's Vera Scanlon.

12   I'm a magistrate judge here in this court.

13             So what would happen is if you decide to go

14   ahead with this change of plea hearing before me is that

15   we're making a recording, so that's why I asked you each

16   to have a microphone in front of you.  And a transcript

17   of the recording of today's proceeding will be prepared

18   by a court reporter.  That transcript will be provided to

19   the district judge, and Judge Cogan will review the

20   transcript of today's proceeding in connection with

21   deciding whether to accept your plea, and if he does,

22   with your sentence.

23             So, do you understand that process?

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  Do you wish to give up your right

7

Proceedings

1    to have Judge Cogan listen to your plea and proceed

2    instead before me today?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  All right.  In connection with your

5    exercise of the right to waive having Judge Cogan hear

6    your plea, and instead proceed before me, I have this

7    form, which I am holding up.

8              Have you seen the form?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT: Did you read it?

11             THE DEFENDANT:  And I signed it.

12             THE COURT:  Okay, first did you read it?

13             THE DEFENDANT:  Yes, ma'am.

14             THE COURT:  Do you understand it?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  And did you have a sufficient

17   opportunity to review it with your attorney?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  And then you said you signed it.

20   Let me just point to where there's a signature for the

21   defendant.

22             Is that your signature?

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  All right.  And then below that,

25   counsel, is that your signature?

8

Proceedings

1          MR. MIEDEL:  Yes, your Honor.

2          THE COURT:  And for the United States, is that

3    your signature?

4          MR. MCDONALD:  Yes, your Honor.

5          THE COURT:  Okay.  All right.

6          So Mr. Hudson, do you give your consent

7    voluntarily and of your own free will to proceed here

8    before me today?

9          THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  And has anyone made any threats or

11    promises to you to get you to agree to proceed before me?

12          THE DEFENDANT:  No, ma'am.

13          THE COURT:  All right.  So I believe that Mr.

14    Hudson has knowingly and voluntarily going ahead with the

15    change of plea hearing before me, so I am going to sign

16    the bottom of the consent form.

17          All right.  So, Mr. Hudson, before we proceed

18    further with this plea hearing, I'm going to have to ask

19    you a number of questions in order to assure myself, and

20    in turn, Judge Cogan, that your plea is, in fact, a valid

21    plea.  So if you don't understand something I say as we

22    go along, please let me know.  If it's a question, I'll

23    try to reword the question.  If it's an explanation, I'll

24    try to clarify it.  I want everything here to be as clear

25    as possible.

9

Proceedings

1            Do you understand that you have the right to be

2      represented by an attorney at trial and at every other

3      stage of the criminal proceeding, including this one?

4            THE DEFENDANT:  Yes, ma'am.

5            THE COURT:  And do you understand that if you

6      can't afford an attorney, the Court may appoint counsel

7      for you?

8            THE DEFENDANT:  Yes, ma'am.

9            THE COURT:  And counsel, are you appointed?

10            MR. MIEDEL:  Yes.

11            THE COURT:  All right.  So if at any time along

12      the way you would like to speak with your attorney, let

13      me know, and I will let you do so.

14            Do you understand?

15            THE DEFENDANT:  Yes, ma'am.

16            THE COURT:  All right.  So Mr. Hudson, you

17      swore to tell the truth earlier when Ms. Quinlan

18      administered the oath to you.  So that means for you, if

19      you answer any of my questions falsely, those answers may

20      later be used against you in a separate prosecution for

21      the crime of perjury or of making a false statement.

22            Do you understand?

23            THE DEFENDANT:  Yes, ma'am.

24            THE COURT:  I'm going to ask you some

25      background questions.

10

Proceedings

1              What's your full name?

2              THE DEFENDANT:  Jahmeek Latif Hudson.

3              THE COURT:  And how old are you?

4              THE DEFENDANT:  35.

5              THE COURT:  And what's the highest level of

6     education that you achieved?

7              THE DEFENDANT:  Tenth grade.

8              THE COURT:  And where did you go to school?

9              THE DEFENDANT:  Lehman High School.

10             THE COURT:  And did you graduate?

11             THE DEFENDANT:  No, ma'am.

12             THE COURT:  And have you gotten a GED?

13             THE DEFENDANT:  No, ma'am.

14             THE COURT:  And after tenth grade, have you had

15    any formal education?

16             THE DEFENDANT:  Yeah, I went to GED school.

17             THE COURT:  Okay.  How long did you go for GED

18    classes?

19             THE DEFENDANT:  Probably like a few months.

20             THE COURT:  Okay.  And besides those post-tenth

21    grade GED classes, have you had any other formal

22    education?

23             THE DEFENDANT:  No, ma'am.

24             THE COURT:  Okay.  Have you recently been under

25    the care of a medical provider, such as a doctor, a

11

Proceedings

1  physician's assistant, something like that?

2          THE DEFENDANT:  Yeah, I had a doctor.

3          THE COURT:  Okay.  So what are you recent

4  medical treatments?

5          THE DEFENDANT:  I had surgery on my leg.  I got

6  shot in my leg, and I had two surgeries.

7          THE COURT:  Okay.  When did the surgeries

8  happen?

9          THE DEFENDANT:  September 15th, 2018.

10          THE COURT:  Okay.  And that was one surgery?

11  How about the second surgery?

12          THE DEFENDANT:  It was September 26th, 2018.

13          THE COURT:  Okay.  Did you have any follow-up

14  treatment from -- after those surgeries?

15          THE DEFENDANT:  Yeah, I was going like once

16  every two weeks, I guess.

17          THE COURT:  For how long?

18          THE DEFENDANT:  Until I got incarcerated this

19  time.

20          THE COURT:  So how long was that?

21          THE DEFENDANT:  Until -- I came in May, so --

22          THE COURT:  May -- I have May 8th.

23          THE DEFENDANT:  May 9th maybe.

24          THE COURT:  So the first appearance I have is

25  May 10th.  Is that right?

12

Proceedings

1          THE DEFENDANT:  All right, but --

2          THE COURT:  Okay.

3          THE DEFENDANT:  -- I got locked up May 9th, so

4    maybe a week before that.

5          THE COURT:  And what were you doing with the

6    doctor with regard to the post-surgical care?

7          THE DEFENDANT:  Therapy.

8          THE COURT:  And since you were incarcerated,

9    have you received any physical therapy?

10          THE DEFENDANT:  Not physical therapy but I see

11   a doctor here and there.

12          THE COURT:  Okay.  All right.  So just going

13   back to the surgery, besides the physical therapy that

14   you had from September through May, did you have any

15   other post-surgical treatment with regard to your knee or

16   leg injury?

17          THE DEFENDANT:  No, besides doctor's

18   appointments, no.

19          THE COURT:  Okay.  Since you've been

20   incarcerated what, if any, medical treatment have you

21   received?

22          THE DEFENDANT:  You know, they give you a full,

23   you know, medical besides a EKG, and dental, not really

24   nothing else.

25          THE COURT:  Okay.  Were you diagnosed with any

13

Proceedings

1   medical conditions when you entered the facility or

2   thereafter?

3          THE DEFENDANT:  No, besides the medical with my

4   law, there's nothing -- nothing else.

5          THE COURT:  Okay.  In connection with the post-

6   surgical care, were you taking any medications?

7          THE DEFENDANT:  They had me on Naproxen.

8          THE COURT:  And when did you stop taking the

9   Naproxen, if you did take it?

10          THE DEFENDANT:  I still take it for the pain.

11   I still got it.

12          THE COURT:  You still take it?

13          THE DEFENDANT:  Yes.

14          THE COURT:  How often do you take it?

15          THE DEFENDANT:  Anytime my leg hurt, anytime

16   I'm in pain.

17          THE COURT:  All right.  How are you doing this

18   week?

19          THE DEFENDANT:  I'm fine.

20          THE COURT:  All right.  Hvae you taken Naproxen

21   this week?

22          THE DEFENDANT:  No, ma'am.

23          THE COURT:  Do you need it?

24          THE DEFENDANT:  No, ma'am.

25          THE COURT:  Okay.  All right.  Besides the leg

                    Proceedings

1    injury, in the past year, have you received treatment for

2    any other medical condition?

3              THE DEFENDANT:  I had a blood clot on my heart.

4    I was taking blood thinners.

5              THE COURT:  Okay.  When were you diagnosed with

6    the clot?

7              THE DEFENDANT:  That was on February --

8    February last year.

9              THE COURT:  '18 or '19?

10             THE DEFENDANT:  '18, February -- yeah.

11             THE COURT:  Okay.  Do you still take the blood

12   thinner?

13             THE DEFENDANT:  No, it -- it drained it out.  I

14   don't have it no more.

15             THE COURT:  Okay.  So the -- is it correct that

16   the blood clot condition has resolved?

17             THE DEFENDANT:  Yes, ma'am.

18             THE COURT:  All right.  Besides the surgeries,

19   and the blood clot, in the past year, have you had any

20   other medical conditions?

21             THE DEFENDANT:  No, ma'am.

22             THE COURT:  All right.  Are you on any other

23   medicine besides the occasional Naproxen?

24             THE DEFENDANT:  No, ma'am.

25             THE COURT:  All right.  Related but different

15

Proceedings

1   question, are you presently or have you been recently

2   under the care of any mental health professional, such as

3   a psychiatrist or a psychologist?

4            THE DEFENDANT:  No, ma'am.

5            THE COURT:  Have you ever been diagnosed with

6   any mental illness?

7            THE DEFENDANT:  No, ma'am.

8            THE COURT:  Have you ever been hospitalized for

9   a mental illness?

10            THE DEFENDANT:  No, ma'am.

11            THE COURT:  Have you ever been hospitalized or

12   treated for any addiction to drugs or alcohol?

13            THE DEFENDANT:  I -- I was in a -- a -- a drug

14   program, if that's what you mean.

15            THE COURT:  Um-hum.

16            THE DEFENDANT:  Yeah.

17            THE COURT:  When was that?

18            THE DEFENDANT:  That was last year.  Parole put

19   me in a drug program.

20            THE COURT:  About when did they put you in the

21   program?

22            THE DEFENDANT:  No, but that was 2017.

23            THE COURT:  2017?

24            THE DEFENDANT:  Yes.

25            THE COURT:  Did you finish the program?

16

Proceedings

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Okay.  Was that inpatient?

3          THE DEFENDANT:  Outpatient.

4          THE COURT:  And how long were you in the

5    program for?

6          THE DEFENDANT:  For about six months.

7          THE COURT:  Okay.  And that was for a drug

8    addiction?

9          THE DEFENDANT:  Marijuana.

10          THE COURT:  Okay.  Have you ever had any

11    addiction to alcohol?

12          THE DEFENDANT:  No, ma'am.

13          THE COURT:  Have you ever had any other -- any

14    addiction to any drug other than marijuana?

15          THE DEFENDANT:  No, ma'am.

16          THE COURT:  All right.  In the past 48 hours,

17    have you consumed any drugs?

18          THE DEFENDANT:  No, ma'am.

19          THE COURT:  In the past 48 hours, have you

20    consumed any alcohol?

21          THE DEFENDANT:  No, ma'am.

22          THE COURT:  In the past 48 hours, have you

23    taken any medications?

24          THE DEFENDANT:  Besides -- no, ma'am.

25          THE COURT:  Did you take Naproxen?

17

Proceedings

1          THE DEFENDANT:  Naproxen, no, I didn't.

2          THE COURT:  No, okay.  All right.  So as you

3   sit here today, is your mind clear?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  And you understand these

6   proceedings, is that correct?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Is there any medical or mental

9   health reason that would interfere with your ability to

10  understand these proceedings here today?

11         THE DEFENDANT:  No, ma'am.

12         THE COURT:  And how is your leg feeling today?

13         THE DEFENDANT:  It's fine.

14         THE COURT:  Okay.  I'm going to ask your lawyer

15  a couple of questions.

16         Counsel, have you discussed this matter with

17  Mr. Hudson?

18         MR. MIEDEL:  Yes, I have.

19         THE COURT:  Have you had any difficulty

20  communicating with him?

21         MR. MIEDEL:  No.

22         THE COURT:  In your opinion, is he capable of

23  understanding these proceedings?

24         MR. MIEDEL:  Yes.

25         THE COURT:  And in your opinion, does he

18

                        Proceedings

1   understand the rights he'll be waiving if he decides to

2   go ahead with his guilty plea?

3              MR. MIEDEL:  Yes.

4              THE COURT:  And do you have any doubt as to his

5   competence to plead at this time?

6              MR. MIEDEL:  No.

7              THE COURT:  And do you believe -- well, did you

8   have an opportunity to explain to him the operation of

9   the sentencing guidelines?

10             MR. MIEDEL:  Yes, I did.

11             THE COURT:  And do you believe he understands

12  the operation of the sentencing guidelines?

13             MR. MIEDEL:  I do.

14             THE COURT:  Okay.

15             All right.  Mr. Hudson, did you have a

16  sufficient opportunity to review this case with your

17  attorney?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  And did you have any difficulty

20  communicating with him?

21             THE DEFENDANT:  No, ma'am.

22             THE COURT:  And are fully you satisfied with

23  the legal representation and advice provided to you by

24  your attorney in this case?

25             THE DEFENDANT:  Yes, ma'am.

19

Proceedings

1          THE COURT:  Did you receive a copy of the

2    document that we call the indictment?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  All right.  Did you read it?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Do you understand it?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Did you have a full opportunity to

9    review it with your attorney?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Counsel, do you want me to read the

12    indictment aloud?

13          MR. MIEDEL:  No, your Honor.

14          THE COURT:  Okay.  So I am going to explain

15    some aspects of a criminal proceeding.  The first and

16    most important thing you should understand, Mr. Hudson,

17    is that you do not have to plead guilty, even if you are

18    guilty.

19          Under the American legal system, the government

20    or the prosecution has the burden of proving the guilt of

21    a defendant beyond a reasonable doubt.  If the

22    prosecution fails to do this, or if it cannot meet its

23    burden of proof, at trial, the jury has the duty to find

24    the defendant not guilty even if the defendant is, in

25    fact, guilty.

Proceedings

1          Do you understand that?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  So for you, you have a choice.
4   It's up to you.  It's not your lawyer's choice.  It's not
5   your family's choice.  It's completely your choice what
6   to do in this case.

7          You may withdraw your previously entered plea
8   of not guilty and plead guilty as I'm told you wish to do
9   or you can choose to go to trial.

10          If you would like to go to trial, when I ask
11   you what your plea is, you would persist in your plea of
12   not guilty.  If you do that, you'll make the United
13   States meet its burden of proving you guilty beyond a
14   reasonable doubt, and were the government to fail in that
15   effort, the jury would have the obligation to find you
16   not guilty.

17          Do you understand?

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  If you plead not guilty, under the
20   Constitution and the laws of the United States, you are
21   entitled to a speedy and public trial by jury with the
22   assistance of an attorney on the charge contained in the
23   indictment which has been filed with the Court.

24          Do you understand?

25          THE DEFENDANT:  Yes, ma'am.

Proceedings

1          THE COURT:  At trial, you would be presumed

2  innocent.  You wouldn't have to prove your innocence.  It

3  would be solely the -- it would be -- sorry -- the

4  government's burden to overcome that presumption and

5  prove you guilty by competent evidence and beyond a

6  reasonable doubt.

7          Do you understand?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  So were the government failed to

10  meet its burden, as I said earlier, the jury would have

11  the duty to find you not guilty.

12          Do you understand?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT: If you plead guilty, you're giving

15  up your right to have the government satisfy its burden

16  of proving you guilty beyond a reasonable doubt.

17  Instead, you'll be admitting your guilt.

18          Do you understand that?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  Were you were to go to trial,

21  witnesses for the government would have to come to court

22  and testify in your presence.  Your attorney would have

23  the right to cross-examine those witnesses for the

24  government, your attorney could object to the evidence

25  offered by the government, your attorney could offer

Proceedings

1   witnesses and other evidence on your behalf.  Your

2   attorney would have the right to compel or subpoena

3   witnesses to come and testify.

4          Do you understand?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  By pleading guilty, and if I

7   recommend to the district judge that he accept your plea,

8   and that's what Judge Cogan does, you're giving up these

9   rights.  You're giving up your right to confront the

10  witness who would testify against you.  You're giving up

11  your right to raise evidence -- to offer evidence on your

12  own behalf, to compel witnesses to come to court to

13  testify, and to raise any defenses that you may have.

14         Do you understand?

15         THE DEFENDANT:  Yes, ma'am

16         THE COURT:  Were there to be a trial in your

17  case, you would have the right to testify on your own

18  behalf if you wanted to do so, but no one could make you

19  testify.  Under the Constitution of the United States, a

20  defendant in a criminal case cannot be forced to take the

21  witness stand at his or her own trial, and say anything

22  that could be used against him to show that he is guilty

23  of the crime or crimes with which he is charged.

24         So, if you decided not to testify at your

25  trial, the judge would instruct the jury that the jurors

23

Proceedings

1  could not hold that fact against you.

2          Do you understand?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  This is sometimes called the right

5  against self-incrimination.  It's also known as taking

6  the Fifth.

7          Do you understand that?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  So if you plead guilty, you're

10  admitting your guilt, and in admitting your guilt, you're

11  giving up your right against self-incrimination.

12          Do you understand?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  If you plead guilty, I'm going to

15  have to ask you questions about what you did in order to

16  satisfy myself, and in turn, Judge Cogan that you, in

17  fact, are guilty of each of the charges to which you

18  plead guilty.

19          You are going to have to answer my questions

20  truthfully and acknowledge your guilt.  You'll be

21  answering those questions subject to the oath that Ms.

22  Quinlan administered to you earlier.

23          Do you understand?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  So it's not going to be enough

24

Proceedings

1   simply for you to say the words guilty, you're going to

2   have to tell me what it is that you did as to each of the

3   charges to show -- each of the charges to which you are

4   pleading guilty, that you are, in fact, guilty.

5           Do you understand?

6           THE DEFENDANT:  Yes, ma'am.

7           THE COURT:  If you plead guilty and I recommend

8   to Judge Cogan that he accept your plea and that's what

9   he does, you'll be giving up your constitutional rights

10  to a trial, and all of the other rights that I have just

11  discussed.  There will not be a trial in your case.  If

12  Judge Cogan accepts your plea of guilty, he will simply

13  enter a judgment of guilty on the basis of your plea.

14          Do you understand?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  If after you are sentenced, you or

17  your attorney thinks the Court has not properly followed

18  the law in sentencing you, you can appeal your sentence

19  to a higher court.  But by pleading guilty, you will not

20  except under very limited circumstances, be able to

21  challenge the judgment of conviction either directly by

22  appeal or indirectly by what we call a collateral attack.

23          Do you understand?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  All right.  Are you willing to give

25

Proceedings

1  up your right to a trial, and the other rights that I

2  just discussed?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  All right.  This is the stage where

5  I usually go over  where there is a plea agreement, so my

6  understanding is there's no plea agreement; is that

7  right?

8          MR. MCDONALD:  That's correct.

9          THE COURT:  Were any plea offers made by the

10  government?

11          MR. MCDONALD:  There were, your Honor.

12          THE COURT:  And counsel for the defendant, were

13  all of those plea offers communicated to your client?

14          MR. MIEDEL:  Yes, I mean the government offered

15  a plea to the charge, and made a recommendation on the

16  guidelines, and that was the plea that was communicated

17  to the -- to Mr. Hudson.

18          THE COURT:  Is there any other --

19          MR. MCDONALD:  There was one --

20          THE COURT:  -- offer?  That's the only --

21          MR. MCDONALD:  -- there was one plea offer

22  made, which he's described, your Honor.

23          THE COURT:  All right.  And is it correct to

24  assume that your client wants to proceed in the way that

25  we're doing today, rather than accept that arrangement

26

                              Proceedings

1   with the government?

2            MR. MIEDEL:  Yes.

3            THE COURT:  Is that correct?

4            MR. MIEDEL:  Yes.

5            THE COURT:  Okay.  And counsel, did you have

6   full opportunity to discuss the ramifications of that

7   choice with your client?

8            MR. MIEDEL:  Yes.

9            THE COURT:  All right.  And Mr. Hudson, did you

10  have a full and fair opportunity to consider the offer

11  made by the government?

12           THE DEFENDANT:  Yes, yes, ma'am.

13           THE COURT:  All right.  And did you have a full

14  and fair opportunity to discuss it with your attorney?

15           THE DEFENDANT:  Yes, ma'am.

16           THE COURT:  And did you fully understand the

17  government's offer?

18           THE DEFENDANT:  Yes, ma'am.

19           THE COURT:  And it is your decision to not

20  accept that offer.

21           Is that correct?

22           THE DEFENDANT:  Yeah, I don't want that.

23           THE COURT:  Okay.  All right.  So we're going

24  to go over the sentencing scheme which is outlined in the

25  document called the plea penalty sheet, which we referred

27

Proceedings

1   to earlier.

2            All right.  So what's been proposed is that Mr.

3   Hudson is going to plead guilty to two counts in the

4   indictment; witness tampering, and conspiracy to tamper

5   with a witness.  So Count 1 is the conspiracy to tamper

6   with a witness, and Count 2 is tampering with a witness.

7            The first count, conspiracy to tamper with a

8   witness is in violation of a federal statute which is

9   referred to as 18 USC Sections 1512(b)(1), and

10  1512(b)(2)(A).

11           And Count 2, tampering with a witness is in

12  violation of a federal statute, that's referred to as 18

13  USC which is United States Code, Sections 1512(b)(1), and

14  1512(b)(2)(A)(ii) and there's also a reference to 3551.

15  All right.  Just so we're clear about what the counts

16  are.

17           So going back to the plea penalty sheet,

18  because the penalties are the same for each count, I am

19  going to talk about them together but there are two

20  separate counts here.  If that's not clear, you should

21  let me know.

22           The statutory penalties for each of these two

23  counts is the maximum term of imprisonment is 20 years.

24  The minimum term of imprisonment is zero years.

25           Do you understand?

28

                              Proceedings

1            THE DEFENDANT:  Yes, ma'am.

2            THE COURT:  The maximum supervised release term

3    is three years.  It would follow any term of

4    imprisonment.  Were you to violate a condition of

5    supervised release, you may then be sentenced for up to

6    two years, which would include no credit for pre-release

7    imprisonment or time previously served on post-release

8    supervision.

9            Do you understand that?

10           THE DEFENDANT:  Yes, ma'am.

11           THE COURT: The maximum fine that can be imposed

12   is $250,000.

13           Do you understand that?

14           THE DEFENDANT:  Yes, ,ma'am.

15           THE COURT:  There's no restitution provision

16   but you will be charged a $100 special assessment per

17   count.

18           Do you understand that?

19           THE DEFENDANT:  Yes, ma'am.

20           THE COURT:  Okay.  The next part is as

21   important as what I just went over.  The sentence imposed

22   on Count 1 may run consecutively to the sentence imposed

23   on Count 2.  So it may be that there is a sentence for

24   one count, and when that's finished, the next sentence

25   picks up.  So --

29

Proceedings

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  -- they need not run concurrently.

3          Do you understand that?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Okay.  Just a few other details

6    with regard to this.  With regard to supervised release,

7    while on supervised release, there may be many

8    restrictions placed on your liberty.  Those restrictions

9    may include travel limitations, the requirement that you

10   report regularly to a probation officer, a prohibition on

11   carrying weapons, including guns, and other limitations.

12          Do you understand that?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  All right.  Do you understand there

15   is no parole in the federal system, so that if you were

16   sentenced to a prison term, you would not be released on

17   parole, and you will be required to spend the entire

18   period of that term in prison.

19          Do you understand?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  All right.  So you mentioned

22   earlier you had state parole.  The federal system is

23   different.  Do you understand that there is that

24   difference?

25          THE DEFENDANT:  Yes, ma'am.

30

                    Proceedings

1           THE COURT:  All right.  So let me ask your

2    attorney, is your client a citizen of the United States?

3           MR. MIEDEL:  Yes.

4           THE COURT:  Is he born in the United States?

5           MR. MIEDEL:  Yes.

6           THE COURT:  All right.  I raise that issue

7    because if you were not a United States citizen, or there

8    were any question as to your citizenship, it could raise

9    a question as to whether conviction in this case would

10   lead to your removal or deportation from the United

11   States.

12          All right.  Counsel, is there any need to go

13   over the immigration question in any more detail?

14          MR. MIEDEL:  No.

15          THE COURT:  Okay.  All right.  Let's talk about

16   the sentencing process.  The sentencing judge, which in

17   your case is going -- or who in your case is going to be

18   Judge Cogan, does not have complete discretion to impose

19   a sentence outside of the statutory minimum and maximum

20   sentences set forth in the statute.  And we just went

21   over what those are.

22          So do you understand that?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  All right.  It's a multi-step

25   process to decide what a sentence should be.  The first

31

Proceedings

1   step is that the judge will consider what we call the

2   advisory sentencing guidelines.  Those are guidelines

3   that have been issued by the United States Sentencing

4   Commission.  Their purpose is to help a judge determine

5   what is a reasonable sentence in a criminal case.

6         The second step in the judge's process, and in

7   determining the sentence is to consider whether there are

8   any factors present that would allow the sentencing judge

9   to depart from those guidelines.  A judge can depart

10  upwardly or downwardly.

11        Third, the judge has to consider factors that

12  are set forth in a particular federal statute, that's 18

13  United States Code, Section 3553(a).  The judge takes

14  those factors and compares them, and considers them

15  against all of the facts and circumstances of your case.

16  After doing all of that analysis, it may be that the

17  judge decides to impose what we would call a non-

18  guideline sentence, which would be something from what

19  the sentencing guidelines recommend as a sentence, or

20  advise as a sentence in your case.

21        The practical import you is that until the date

22  of sentence, when a judge has gone through this process,

23  has received and read a pre-sentence report that will be

24  prepared about you, and hears from you, your lawyer, and

25  the government, you cannot know with certainty what the

Proceedings

1   sentencing guidelines will be for your case, or whether

2   will be grounds for the judge to depart from those

3   guidelines, whether it's upwardly or downwardly, and

4   whether the judge will impose a guideline sentence or a

5   non-guidelines sentence.

6          So you can't know what your sentence is going

7   to be until the actual date of sentencing.

8          Do you understand?

9          THE DEFENDANT:  Yes, ma'am.

10         THE COURT:  All right.  Despite the lack of

11  certainty, I am going to ask the lawyers to give their

12  best estimate as to what the guidelines are likely to

13  say.  You should note that this estimate is based upon

14  the facts that are available to them at this point in

15  time.  It may be that they learn things between now and

16  the date of sentencing.  It may be that circumstances

17  change between now and the date of sentencing.

18         So at best, this is an estimate, and it's

19  really based on what they know now.  And as I said, that

20  could change.

21         So for the government, I'm going to ask you to

22  give the estimate.  I understand that your estimate is

23  outlined on the second page of the plea penalty sheet.

24         Is that correct?

25         MR. MCDONALD:  It is, your Honor.

33

                        Proceedings

1        THE COURT:  All right.  So if you could for the

2   record, just state what you believe the guidelines

3   estimate is for this case.

4        MR. MCDONALD:  The estimated guidelines are

5   from the government's analysis, are 57 to 71 months,

6   assuming the defendant falls within criminal history

7   category four.  There's again, some possibility of maybe

8   slightly below 57 to 71 months, if the government makes a

9   third point motion at the time of sentencing, which is

10   not included here, as part of the calculation.  So our

11   current estimate is 57 to 71 months.

12        THE COURT:  Okay.  So Mr. Hudson, do you

13   understand what the government's position is to what your

14   sentencing guidelines are likely to be for this case?

15        THE DEFENDANT:  Yeah, yeah, I guess.  Yeah.

16        THE COURT:  Do you need the government to say

17   any more?  Do you need to --

18        THE DEFENDANT:  No, I don't -- that's -- that's

19   ridiculous.

20        THE COURT:  Okay.  So it's not -- right now,

21   it's not a conversation of what it should be.  This is

22   just to make sure you understand what the government's

23   current estimate is as to what the sentencing guidelines

24   may say based on the information available to them.

25        THE DEFENDANT:  Yeah, I understand.

34

Proceedings

1       THE COURT:  All right.  So did you read the

2  back of this second page of the plea penalty sheet, which

3  outlines what the government's position is?

4       MR. MIEDEL:  Your Honor, I think Mr. Hudson

5  read the or we talked -- certainly talked abut the plea

6  offer, which contained a similar analysis.  We just

7  received this today, so he hasn't read this actual

8  document but we've discussed it at length.

9       THE COURT:  Okay.  Is there anything different

10  here that you need to have time to review with Mr.

11  Hudson?

12       MR. MIEDEL:  No.

13       THE COURT:  All right.  So defendant's counsel,

14  what's your estimate as to what the sentencing guidelines

15  are likely to be?

16       MR. MIEDEL:  Well, your Honor, let me put it

17  this way.  The guidelines calculation in this case is

18  somewhat complicated.  And we do not, at this point,

19  agree with the government's calculation, believe it to be

20  lower.  What the precise guidelines calculation is, given

21  all the factors, I cannot tell you at this moment, but we

22  believe that it will -- that ultimately, that the

23  guidelines range will be lower.

24       THE COURT:  Okay.  So for you, Mr. Hudson, if

25  you decide to continue with the process that we have

35

Proceedings

1    started now, and that you do decide to enter a guilty

2    plea which is totally up to you, you're not going to know

3    what your sentence is, and it's for the reasons that I

4    described earlier, which is which is that it's a multi-

5    stepped process that the judge needs to go through, based

6    on all of the information being presented to him, and

7    that information, some of it is known to the government

8    now, some of which your attorney's presumably developing,

9    but much of which will be included in the pre-sentence

10   report, which is what the written report the judge will

11   receive about you, but you know that doesn't exist yet.

12            So based on your -- the government's take on

13   the facts of the case, and the circumstances, they

14   believe there will be a certain guidelines, your attorney

15   just articulated that this is a complicated calculation

16   and he's going to advocate on your behalf for a different

17   sentence, that the sentencing guidelines should be lower,

18   and then that the sentence should be lower.

19            All of that will be developed over time between

20   -- if you  decide to enter your plea of guilty, and the

21   date of sentencing, but what's really important for you

22   to consider is you can't know what their respective

23   positions are going to be at the date of sentencing, and

24   what they'll be able to present to the judge, and you

25   can't know what Judge Cogan is going to do.

36

Proceedings

1          So if you decide to go ahead with this plea,

2    you are making that decision based on strong degree of

3    uncertainty as to what your sentence is going to be, or

4    even likely to be.

5          So do you understand that?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  All right.  Despite all of that

8    uncertainty, do you still want to proceed with our

9    proceeding today?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  All right.  So do you understand

12   that the estimates that were given here today by your

13   attorney, and -- well, your attorney -- let me say that

14   differently.

15          Do you understand that the estimates given by

16   the government, and the factors that were identified by

17   your attorney as potentially altering that calculation,

18   none of that is binding on the Court?

19          THE DEFENDANT:  No, say that again.

20          THE COURT:  Okay.  So basically, the government

21   is thinking that the sentencing guidelines at your date

22   of sentence are likely to be a certain number, which for

23   now is likely to be between 57 and 71 months, based on

24   certain assumptions, and it might be that the government

25   makes a motion to bring that down a little bit, but they

37

Proceedings

1  haven't made a decision on that front yet.  That's one

2  side of this calculation.

3              Another part is your attorney's going to make

4  several arguments that will, if he is successful, lower

5  the sentencing guidelines, and might persuade the judge

6  to give you a lower sentence than 57 to 71 months.

7              Do you understand that?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  Okay.  Those are, each side of the

10  case, your respective positions, and the lawyers will

11  advocate as they should, on behalf of their respective

12  clients.  None of that's binding on the judge.  The judge

13  has to go through the three-step process that I described

14  earlier, and come to a decision as to what the sentencing

15  guidelines are for your case, and what your sentence will

16  be.

17              So do you understand the difference --

18              THE DEFENDANT:  Yes, ma'am.

19              THE COURT:  -- between what the lawyers are

20  saying, and what the judge does?

21              THE DEFENDANT:  Yeah, it don't matter what they

22  say.  It's up to the judge.

23              THE COURT:  Well, they might be persuasive to

24  the judge, so you should know that the judge is going to

25  hear their side of the advocacy, and the judge is also

38

                              Proceedings

1    going to hear your side.

2              THE DEFENDANT:  Yes.

3              THE COURT:  Okay?

4              THE DEFENDANT:  Uh-hum.

5              THE COURT:  So both sides are going to be

6    presented, and then the judge will make an independent

7    decision, taking all of that into account.

8              THE DEFENDANT:  Right.

9              THE COURT:  All right.  So do you understand

10   that process?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  Okay.  All right. Do you understand

13   even if the government is wrong about what the estimate

14   of your sentencing guidelines should be, or your lawyer

15   is wrong, as to the chances of success on persuading the

16   judge one -- you know, to have a better sentence, you

17   will not be allowed to withdraw your guilty plea solely

18   because of the possibility that they'll -- one or more of

19   the lawyers is wrong about the sentencing guidelines or

20   your likely sentence.

21             Do you understand that?

22             THE DEFENDANT:  Yes, ma'am.

23             THE COURT:  Okay.  So your ultimate sentence

24   could turn out to be different from what either lawyer

25   has said here today.

39

Proceedings

1           Do you understand that?

2           THE DEFENDANT:  Yes, ma'am.

3           THE COURT:  Okay.  So it could turn out that

4    because of other statutory sentencing factors, Judge

5    Cogan may impose a sentence even higher than the one

6    called for by the advisory sentencing guidelines.

7           If that turned out to be the case, that

8    wouldn't be a basis for you to withdraw your guilty plea

9    simply because no one could tell you in advance what your

10   sentence might be.

11          Do you understand that?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  Okay.  Do you understand that if

14   you go ahead with your guilty plea and if it's accepted

15   by the district judge, that you are pleading guilty to a

16   felony offense -- to felony offenses and if the plea is

17   accepted and you are adjudged guilty, that adjudication

18   may result in the deprivation of valuable civil rights.

19   Those rights include your right to vote, hold public

20   office, serve on a jury, and possess a firearm, among

21   other rights.

22          Do you understand?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  All right.  So I've gone over here

25   today many of the possible consequences to you if your

40

Proceedings

1    guilty plea is accepted.

2           Do you understand all of these possible

3    consequences?

4           THE DEFENDANT:  Yes, ma'am.

5           THE COURT:  Have you reviewed them with your

6    attorney?

7           THE DEFENDANT:  Yes, ma'am.

8           THE COURT:  Did you have a sufficient

9    opportunity to review them with your attorney?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  All right.  Let me ask the

12   government some questions.  Is the government prepared to

13   prove at trial all of the elements of the two counts

14   against the defendant?

15          MR. MCDONALD:  Yes, your Honor, we are.

16          THE COURT:  And those elements are set forth in

17   the element sheet.

18          Is that correct?

19          MR. MCDONALD:  They are, your Honor.

20          THE COURT:  All right.  I asked this question

21   earlier, but defendant's counsel, do you have any comment

22   or disagreement with anything stated in the elements

23   sheet?

24          MR. MIEDEL:  I think you did, and I don't.

25          THE COURT:  Okay.

41

Proceedings

1          THE COURT:  All right.  For the government,
2     what is the evidence the government would offer at trial
3     to prove the charges against the defendant?
4          MR. MCDONALD:  Your Honor, the government would
5     establish the following, that at or around the time of
6     this offense, which was April of 2019, there was then at
7     that time scheduled in the Eastern District of New York,
8     a federal criminal trial against an individual known as
9     Shakeem Boykins, which was scheduled to commence on or
10    about June 10th of 2019.
11          In or about Aril of 2019, an individual known
12    as Jane Doe contacted law enforcement to report that
13    photocopies of a New York City Police Department
14    interview report concerning Jane Doe had been posted in
15    the lobbies of various buildings in the Louis H. Pink
16    Houses in Brooklyn, New York.  Among other things, those
17    posters described Jane Doe as a rat, and said that she is
18    still ratting.
19          Based on this information, law enforcement
20    officers reviewed and obtained cell phone, and video
21    surveillance records from the Louis H. Pink Houses.  As
22    part of their review, law enforcement officers identified
23    the defendant Jahmeek Hudson was the individual who
24    posted these posters in the Louis H. Pink Houses, and the
25    government would introduce video surveillance evidence

42

Proceedings

1    showing the defendant posting these posters.

2            The government would also introduce records

3    obtained from various communication services including

4    Facebook, showing communications by the defendant in

5    connection with posting these posters, including showing

6    his awareness that Jane Doe was likely to be a witness in

7    the trial against Shakeem Boykins in June of 2019.

8            The government would also show that the

9    defendant Jahmeek Hudson, worked with another individual

10   as part of posting these posters, and this would include

11   from video surveillance evidence, as well as recordings

12   sent by the defendant which would included multiple

13   voices on the recordings.

14           So this would be a summary of what the

15   government would show at trial.

16           THE COURT:  All right.  And just so I'm clear,

17   when you say that the government would offer evidence

18   that Mr. Hudson worked with another individual in the

19   activities related to Jane Doe.  That's the evidence that

20   he agreed with that person to pursue these actions

21   against Jane Doe; is that correct?

22           MR. MCDONALD:  Yes, your Honor.  The individual

23   who was -- there would be two pieces to show that one,

24   the defendant posted most of the posters but the other

25   individual posted some of the additional posters, so that

43

Proceedings

1   would show concerted effort by the two of them to post

2   the same poster in each of the buildings.

3          In addition, the recordings indicate multiple

4   people present during the same conversations that

5   describe Jane Doe as a rat and other language to that

6   effect, and that would show agreement with respect to

7   that characterization.

8          THE COURT:  Okay.  All right.  Counsel, do you

9   agree that government would be able to prove the

10  defendant's guilt as to the two charges in the indictment

11  based on the evidence just described by the government?

12         MR. MIEDEL:  Yes, your Honor.

13         THE COURT:  Do you know of any reason why Mr.

14  Hudson should not plead guilty?

15         MR. MIEDEL:  No, your Honor.

16         THE COURT:  Are you aware of any viable legal

17  defense to the two charges against him?

18         MR. MIEDEL:  No.

19         THE COURT:  In your professional opinion, is it

20  in Mr. Hudson's best interest to proceed with the plea

21  here today?

22         MR. MIEDEL:  Yes, it is.

23         THE COURT:  All right.  So Mr. Hudson, are you

24  ready to plead?

25         THE DEFENDANT:  Yes, ma'am.

44

Proceedings

1          THE COURT:  All right.  Do you need an

2    opportunity to speak with your attorney about anything?

3          THE DEFENDANT:  No.

4          THE COURT:  Just giving you an opportunity to

5    talk to him if you have any questions that you need

6    answered before you make the decision as to whether you

7    would like to change your plea.

8          THE DEFENDANT:  No, I'm good.

9          THE COURT:  No, okay.

10         THE DEFENDANT:  I'm fine.

11         THE COURT:  All right.  So with regard to the

12    indictment, there's Count 1, which is the conspiracy to

13    tamper with a witness, how do you plead, guilty or not

14    guilty?

15         THE DEFENDANT:  Guilty.

16         THE COURT:  And with regard to Count 2, which

17    is tampering with a witness, how do you plead, guilty or

18    not guilty?

19         THE DEFENDANT:  Guilty.

20         THE COURT:  Okay.  So going back to the

21    beginning of the -- sorry, the beginning of today's

22    proceeding, I said I was going to have to ask you

23    questions about what you did so that I could assure

24    myself, and in turn, the district judge, Judge Cogan,

25    that you are in fact, guilty of these two counts.

45

Proceedings

1        So in your own words, if you could tell me what

2   you did such that you are, in fact, guilty of the two

3   counts in the indictment, conspiracy to tamper with a

4   witness, and tampering with a witness.

5        THE DEFENDANT:  So in 2019, in Brooklyn, I

6   agreed with others to try to prevent a person from

7   testifying at a federal trial.  I did so by revealing her

8   name to the public by putting posters up about her, and

9   by urging people who knew her to tell her not to testify.

10       I understand that she might have felt

11  intimidated by my actions.  I understand that what I did

12  was unlawful, and I apologize.

13       THE COURT:  All right.  for the government --

14  well, let me ask defense counsel, would you like your

15  client to add anything else to the record with regard to

16  the plea to the two counts?

17       MR. MIEDEL:  No, your Honor.

18       THE COURT:  For the government, is that

19  allocution satisfactory?

20       MR. MCDONALD:  I believe he mentioned Brooklyn.

21       MR. MIEDEL:  Yes.

22       THE COURT:  Yes.

23       MR. MCDONALD:  Yes, that's satisfactory, your

24  Honor.

25       THE COURT:  Okay.  Let me ask you a few more

46

Proceedings

1   questions, Mr. Hudson.

2           Are you pleading guilty to these two counts

3   voluntarily and of your own free will?

4           THE DEFENDANT:  Yes, ma'am.

5           THE COURT:  Has anyone threatened or forced you

6   to plead guilty to these two counts in the indictment?

7           THE DEFENDANT:  No, ma'am.

8           THE COURT:  Are you pleading guilty of your own

9   free will because you are, in fact, guilty of the two

10  counts in the indictment?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  All right.  Based on the

13  information given to me here today by counsel, and by Mr.

14  Hudson, I believe he fully -- he is fully competent, and

15  capable of entering an informed plea, that he is acting

16  voluntarily, that he aware of the nature of the charges

17  against him, that he understands his rights, that he

18  understands the consequences of his change of plea to a

19  plea of guilty, and I find that there's a factual basis

20  for the plea as to each of the counts in the indictment.

21          So I therefore respectfully recommend to

22  District Judge Cogan that he accept the plea of guilty to

23  both counts in the indictment, which as we said earlier,

24  was conspiracy to tamper with a witness, and tampering

25  with a witness.

Proceedings

47

1        All right.  Do we have a sentencing date?

2        THE CLERK:  Yes, January 7th at 10:30 a.m.

3        THE COURT:  So January 7th, at 10:30 -- sorry,

4  January 7th, of 2010 -- sorry, 2020, at what time?

5        THE CLERK:  10:30.

6        THE COURT:  10:30 a.m.

7        So as I mentioned earlier, Mr. Hudson, there's

8  going to be a presentence report provided or prepared

9  about you.  For your attorney, would you like to

10 participate in that interview process?

11       THE DEFENDANT:  My --

12       THE COURT:  That question is for your lawyer.

13       MR. MIEDEL:  Oh, I am so sorry.  I do want to

14 be present, yes.

15       THE COURT:  Okay.  So we'll let probation know

16 that.

17       Is there any reason that the custodial

18 situation with regard to Mr. Hudson should change?

19       MR. MCDONALD:  No, your Honor.

20       MR. MIEDEL:  No, your Honor.

21       THE COURT:  Okay.  Is there anything else we

22 need to include on the record?

23       MR. MCDONALD:  Not from the government, your

24 Honor, no.

25       MR. MIEDEL:  No, your Honor.  Thank you.

48

                        Proceedings

1          THE COURT:  All right.  Let me just ask, there

2    are some individuals in the courtroom, are they here to

3    support Mr. Hudson?

4          MR. MIEDEL:  Yes, they are.

5          THE COURT:  All right.  So do you want to note

6    their appearance on the record, or we'll just --

7          MR. MIEDEL:  I can, one is his mother, one is

8    his girlfriend.

9          THE COURT:  Okay.  I should actually ask one

10   question going back to the plea, it was something we

11   touched at the beginning.  We didn't name the Jane Doe,

12   the person was referred to as Jane Doe.  Let me -- I

13   don't know who the Jane Doe is, so let me make clear

14   questions to Mr. Hudson.

15         You spoke about Jane Doe.  It's obviously not

16   her real name.  We're not asking you to include her name

17   in the record but do you know who Jane Doe is?

18         THE DEFENDANT:  Um-hum.

19         THE COURT:  The answer is yes?

20         THE DEFENDANT:  Yes, ma'am.  Yes, ma'am.

21         THE COURT:  Okay.  So that's really the only

22   additional piece of information I wanted to add to the

23   record.  All right.  So let me ask again, just to make

24   sure, is there anything else we should add to the record

25   here?

49

Proceedings

1          MR. MCDONALD:  No, your Honor, not from the

2    government.

3          THE COURT:  No.

4          MR. MIEDEL:  No, your Honor.

5          THE COURT:  All right.  Thank you very much.

6    Take care.

7          MR. MCDONALD:  Thank you, your Honor.

8          THE COURT:  Take care, bye.

9               (Matter concluded)

10                   -o0o-

11               (Matter concluded)

12                   -o0o-

13

14

15

16

17

18

19

20

21

22

23

24

25

50

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **11th** day of **November**, 2019.

*Linda Ferrara*
Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.