

July 30, 2020

**By ECF and Email**
Hon. Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

                               Re:     ***United States v. Jahmeek Hudson***
                                                  **19 Cr. 259 (BMC)**

Dear Judge Cogan:

       Mr. Hudson is scheduled to be sentenced by Your Honor on August 5, 2020. On June 1, 2020, the Court notified the parties that it was considering an upward variance from the likely guidelines in this case. In light of the disastrous, and frankly, brutal, conditions of confinement Mr. Hudson has had to endure since early March, I respectfully urge the Court to reconsider, and to impose a sentence below the guideline range.

**COVID-19**

       As the Court is probably aware, MDC Brooklyn, where Jahmeek Hudson is detained, was the first BOP institution in the nation to have a documented case of COVID-19. *See* Michael Balsamo, "1st fed inmate tests positive for coronavirus," *Associated Press* (March 21, 2020), available at https://apnews.com/ec49cc7f4d1b00bc5010dfb6d935e042. Correctional staff and detainees alike at MDC have described inadequate personal protective equipment, insufficient sanitation, little to no effort at contact tracing, and symptomatic detainees left untested and uncared for. *See Chunn v. Edge*, 20-Cv-1590 (RPK), _F.Supp.3d_, 20 WL 3055669, *13-*14 (June 9, 2020 E.D.N.Y.). Dr. Homer Venters, a correctional health expert who has worked with the Department of Justice to evaluate several state correctional medical facilities, reported on MDC's multiple failures to follow CDC guidance in identifying and caring for positive inmates. *Id.*, at *4. Judge Rachel Kovner, who is overseeing the class action lawsuit against MDC related to its actions during the COVID-19 crisis, found that medical staff at MDC "take days or even weeks to respond to some sick-call requests reporting COVID-19 symptoms," even when those reports include "trouble breathing." *Id.*, at *17-*18. Judge Kovner further found that "from March 13 to early May MDC was neither isolating nor testing more than 80 percent of inmates who report[ed] symptoms of COVID-19." *Id.* at 19. And the number of COVID-19 cases at MDC has only continued to rise, even while the number of cases in New York City falls. On May 26, 2020, the MDC reported 6 positive inmates and 39 positive staff members; on July 23, 2020, those numbers had risen to 14 positive inmates and 42 positive staff members. *Compare* Letter of Wardens Licon-Vitale and Edge to Chief Judge Mauskopf (May 26, 2020), available at

https://www.nyed.uscourts.gov/pub/bop/MDC_MCC_20200526_054048.pdf *with* Letter of Wardens Licon-Vitale and Edge to Chief Judge Mauskopf (July 23, 2020), available at https://www.nyed.uscourts.gov/pub/bop/MDC_MCC_20200724_122012.pdf.

Jahmeek Hudson did not, to his knowledge, contract the virus.  However, one should not underestimate the psychic toll endured by Mr. Hudson and other MDC inmates as a result of the fears they felt as the virus swept through BOP facilities, including the MDC.  Mr. Hudson had no ability to control his own responses to the pandemic.  He could not decide himself how vigilant to be about social distancing, scrubbing down his surroundings, wearing protective gear, contact with others.  His personal response to dealing with a potentially deadly virus was entirely controlled by others – others who often did not seem to care much about the well-being of the inmates for whose safety and wellness they were responsible.  This lack of agency undoubtedly had deleterious effects on Mr. Hudson's own psychological well-being.

***Full Lockdown***

But COVID-19 is not the only danger within the walls of the MDC.  During the complete lockdown of the institution that began on March 13, 2020, in order to safeguard detainees from COVID-19, two people have died and others have been badly injured.  The jail is not safe.  Jamel Floyd, 35 years old, died at MDC Brooklyn, on June 3, 2020, after being pepper-sprayed by officers.  He was reportedly "disruptive," alone in a cell in the Solitary Housing Unit.  *See* "Inmate Death at Metropolitan Detention Center Brooklyn, NY", BOP Press Release, June 3, 2020.  Congressman Jerry Nadler and Congresswoman Nydia Velazquez have called for a full investigation into his death.  The BOP so far has refused to release Jamel Floyd's medical records to his family.

Kenneth Houck, 44, died just two weeks earlier, on May 19, 2020, after being found hanging in a shower in the same Solitary Housing Unit at MDC.  He was an openly gay man, who had previously been assaulted while in federal custody in Philadelphia.  Houck had a cellmate.  Officers were supposed to be safe-guarding these detainees 24 hours a day.  According to the BOP's report to the judge overseeing Mr. Houck's case, the circumstances of his death are "unknown."  *See* ECF No. 18, *United States v. Kenneth Houck*, 20-Cr.-95 (NAM) (N.D.N.Y.) (May 19, 2020, Letter of Warden Derek Edge).

Mostly recently, following an unspecified "institutional emergency" at MDC on June 25, 2020, a heavily armed search team went cell to cell on the sixth floor of the facility, destroying legal papers and family photographs, and assaulting detainees who did not comply with orders quickly enough.  According to accounts from inside the facility, one detainee was beaten so badly by the search team that he was sent to the hospital for a fractured wrist.

For the last four months, there has been little to no outside monitoring of the MDC.  The BOP has been on a complete lockdown, preventing families and attorneys from entering the institutions and meeting with their loved ones and clients, and severely restricting detainees' ability to safely inform people on the outside of the abuses happening on the inside.

Admittedly, many of the restrictions were put in place to prevent further spread of COVID-19 within the facility.  But just because there may be a legitimate reason for

transforming a traditional prison experience into that usually reserved only for those inmates meriting further punishment does not extinguish the fact that Mr. Hudson's conditions of confinement have been extraordinarily harsh.  I conveyed the nature of these harsh conditions to the Court by letter on May 27, 2020, and little has changed in two months.  Mr. Hudson continues to be confined to a small cell with a cellmate for 21 or more hours per day.  He has not been able to see his family, or his lawyer, except by video.  He has been detained under conditions traditionally reserved for those who violated the rules and laws of the facility – for those who are receiving extra punishment.  Mr. Hudson was convicted of a non-violent offense.  He has not been disruptive in the facility.  Courts frequently consider the conditions of confinement endured by defendants in foreign jails awaiting extradition because of the harsh nature of the imprisonment.  In recent months, conditions at the MDC for Mr. Hudson have not differed in any meaningful way from those he might have experienced in Colombia or Saudi Arabia or other places where conditions of confinement frequently serve as a basis for a reduction in sentence.  I therefore simply urge the Court to take these extraordinary circumstances into account in determining a just and fair sentence.

   For these, and all the other reasons set forth in prior sentencing submissions, I respectfully urge the Court to impose a sentence below the applicable guideline range, which, under the particular present circumstances is sufficient but not greater than necessary under 18 U.S.C. § 3553(a).

                Respectfully Submitted,

                /s/

                Florian Miedel
                *Attorney for Jahmeek Hudson*

cc:  AUSA James P. McDonald